FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>MIDDLE DIVISION</u>

02 NOV 20 AM 9:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| KEN SITERS, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 00-PWG-0244-M |
| | ) |
| RUBY TUESDAY, | ) |
| | ) |
|     Defendant. | ) |

ENTERED
NOV 2 0 2002

<u>MEMORANDUM OF OPINION</u>

    Ken Siters, plaintiff, initiated this civil action against Ruby Tuesday, a Georgia corporation, alleging Alabama state law claims for breach of contract, conversion and fraud. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties have consented to the magistrate judge's dispositive jurisdiction under to 28 U.S.C. § 636(c) and LR 73.2.

    This matter is before the magistrate judge on Ruby Tuesday's Motion to Dismiss for Failure to State a Claim or, Alternatively, Motion for Summary Judgment (document #16) and Siters's Motion for Summary Judgment (document #19).

    Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of

his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

In September of 1995 Mr. Siters was offered the opportunity to participate in a Managing Partner program by entering into a Ruby Tuesday Managing Partner Agreement ("MPA" or "Agreement"). (See Exhibit A to Affidavit of Daniel T. Cronk; Complaint, ¶¶ 3, 4). The MPA offers enhanced base salary and profit-sharing potential for a five-year period to selected managers who assume a greater degree of responsibility for the operation of their restaurants than those managers who are not operating under the MPA.

The MPA sets forth the compensation a Managing Partner will receive if he remains employed for a period of five years. A Managing Partner will receive an annual base salary of $50,000, supplemental bonuses on the first and second anniversaries, and a profit-sharing amount

that is equal to a percentage of the cumulative increase in unit profits. (See MPA, ¶¶ 3.1, 3.2 and 3.3). The amount of the profit sharing depends on the Managing Partner's length of employment. (See MPA, ¶ 3.3). Under ¶ 3.3, each of the five years is divided into periods and referred to as a "Contract Year." (MPA, ¶ 3.3).

Article IV of the MPA is entitled "Term and Termination" and sets out the conditions for termination of the MPA. (See MPA, Article IV). Paragraph 4.1 of the MPA states "The term of this Agreement shall begin as of the Effective Date and **shall continue** until the fifth anniversary of the Effective Date, unless extended in accordance with this Section 4.1." (MPA ¶ 4.1) (emphasis added). Section 4.2 provides that the MPA can be terminated by mutual agreement or death of the Managing Partner. (See MPA, ¶ 4.2). Section 4.3 provides that the Managing Partner may terminate the MPA "for any reason." (See MPA, ¶ 4.3). Section 4.4 provides that Ruby Tuesday may terminate the MPA (a) at any time with or without cause during a probationary period or (b) "immediately for 'cause,' as determined by [the Company] in the exercise of its sole discretion." Section 4.4(d) provides for termination by the company <u>at any time upon thirty (30) days prior</u> written notice other than for "cause," as defined in Section 4.4(b) above." (See MPA, ¶ 4.4(d)). (Emphasis added).

Article V of the MPA provides protective covenants governing confidentiality of proprietary information, no solicitation of other employees and a covenant not to compete which Mr. Siters maintains constituted consideration. (MPA ¶ 5.1, 5.2, 5.3). Mr. Siters's employment with Ruby Tuesday was terminated in April of 1997. (See Complaint, ¶ 4).

It is undisputed that Mr. Siters did not receive written notice of his termination. (Siters's affidavit). Subsequent to his termination Mr. Siters has abided by the Protective Covenants under Article V of the Contract. (*Id.*)

**I. Conversion and fraud claims**

Ruby Tuesday argued in its memorandum that "plaintiff alleges one and only one claim – breach of contract." (Document #17, p. 8). In response, Mr. Siters avers that Ruby Tuesday did not address the conversion and fraud claims of counts three and four. (Document # 19, p. 2). In its reply brief, Ruby Tuesday argues that while Mr. Siters uses the word "converted in count three in connection with his allegation that he is owed vacation pay and a bonus under the terms of the MPA, he is actually seeking monetary damages as a result of the alleged breach of contract." (Document # 22, pp. 1-2).

In the reply brief, Ruby Tuesday also argues that the fraud claim in count four of the complaint lacks specificity and does not appear to be directed to Ruby Tuesday. In count four, Mr. Siters alleges:

> 1. Plaintiff hereby realleges paragraphs 1 through 3 of Count Three of this Complaint and makes them a part of this Count Four by this specific reference.
>
> 2. Plaintiff alleges all causes of action herein asserted against Defendant RTI against Defendants One through Twenty with any and all negligent acts and omissions and any all wanton, intentional, and/or fraudulent acts and omissions as are charged against Defendant RTI.

Although Mr. Siters filed a supplemental response, he did not address either of the arguments of the defendant. The claims for conversion and fraud are deemed to have been abandoned. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301,

4

1325-26 (11th Cir. 2000). A review of the complaint reveals that count three, the conversion count, does not state an independent claim for damages but is an effort to seek punitive damages from a breach of contract claim when Mr. Siters has conceded that he is entitled only to compensatory damages on the breach of contract count. In addition, the allegations of fraud in count four do not appear to be directed to Ruby Tuesday but to fictitious defendants "one through twenty." Count four does not allege the conduct that would constitute fraud and does not comply with Rule 9(b), A.R.Civ.P. nor Rule 9(b), *Federal Rules of Civil Procedure*.

## II. Breach of contract claim

The elements of a contract are: an agreement, consideration, two or more contracting parties, a legal object, and capacity. *Shirley v. Lin*, 548 So.2d 1329 (Ala. 1989). There is no question that the MPA constituted a contract. The question is whether the contract modified the employment-at-will relationship.

In *Hoffman-Laroche, Inc. v. Campbell*, 512 So.2d 725 (Ala. 1987), the Alabama Supreme Court stated:

> [T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification. (citations omitted). This means a *good* reason, a *wrong* reason, or *no* reason. *Hinrichs, supra*.
>
> [T]hree elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration, (citations omitted); (2) that the hiring agent had authority to bind the principal to a permanent employment contract, (citations omitted); and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered. (citations omitted).

512 So.2d at 728. (citations omitted).

Mr. Siters questions whether *Hoffman-Laroche* applies when as here a written agreement exists rather than a handbook which is said to modify the employment-at-will relationship.

The Alabama courts have concluded, however, that a written agreement or contract does not modify the "at will" employment relationship unless the contract constitutes an unequivocal contract for a specific period of employment. See, *Ex parte Gardner*, ___ So.2d ___, 2001 WL 1219020, *6 (Ala. 2001); *Bain v. Gartrell*, 666 So.2d 523, 524 (Ala. Civ. App 1995); *Udcoff v. Friedman*, 614 So.2d 436, 438 (Ala. 1993); *Shirley v. Lin*, 548 So.2d 1329, 1332 (Ala. 1989). Whether the court specifically applies *Hoffman-Laroche* or not, Mr. Siters cannot show that the MPA modified the "at will" employment relationship.

In response to Ruby Tuesday's argument that Mr. Siters cannot establish that a clear and unequivocal offer of lifetime employment or employment of a definite duration, Mr. Siters refers to the MPA which states that "The term of this Agreement shall begin as of the Effective Date and shall continue until the fifth anniversary of the Effective Date, unless extended in accordance with this Section 4.1." He also notes further points to § 3.3 which discusses the benefits to be attained at the end of each of the five "contract years." Finally, Mr. Siters argues that § 4.4(d) of the MPA is ambiguous as to the defined five year period.

In *Ex parte Gardner*, ___ So.2d ___, 2001 WL 1219020, *8 (Ala. 2001), the Alabama Supreme Court found that under the termination-notice provision in the insurance sales agent's agreement the employment agreement was subject to termination at any time by either party with deliver of the required notice. The court held that "The availability of a termination review

provision ...did not change the at-will character of the Agent's Agreement as a contract of employment."

In *Bain v. Gartrell*, 666 So.2d 523, 524 (Ala. Civ. App. 1995), the state appellate court held that despite a provision in the contract providing for minimum compensation of $3,500.00 a month for the first year, the plaintiff failed to carry his heavy burden of establishing that the employment relationship was anything other than "at will."

In *Udcoff v. Friedman*, 614 So.2d 436 (Alabama 1993), a letter of employment did not constitute an unequivocal contract for a specific period of employment because the Mr. Siters could be discharged at any time and for any purpose. Although the letter offered a number of benefits, "The letter did not unconditionally promise Udcoff any of those listed benefits; on the contrary, it clearly stated that the terms and conditions of Udcoff's employment were contingent on how well Udcoff could perform in his position as creative director, how much business he could generate, and how much 'fun' it was to work with him." 614 So.2d at 438. The *Udcoff* court distinguished that case from *Shirley v. Lin* in which the Alabama Supreme Court found no error in the trial court's determination that "the provisions of the contract concerning the length or duration of Dr. Lin's employment were unambiguous and clearly stated a term of employment for five years." The letter which constituted the contract in Shirley made no reference to any method of termination of the contract.

The mere fact that there is a contract and that the contract contains a termination provision does not establish an ambiguity. An employment remains an "at-will" relationship despite providing for additional terms for the relationship.

7

In *Salter v. Alfa Insurance Company, Inc.*, 561 So.2d 1050 (Ala. 1990), the court held that "The undisputed evidence showed that Salter had an employment contract with Alfa that was terminable at the will of either party" because the contract provided for termination of the contract upon ten days written notice of termination by either party.

The question here is whether the contract is ambiguous. *Ex parte Gardner*, ___ So.2d ___, 2001 WL 1219020 (Ala. 2001). If the essential terms are ambiguous, the jury must determine the meaning of the contract's provisions. *Id.* If the terms are not ambiguous, the construction of the contract and the legal effect are issues of law to be decided by the court. *Id.*

Section 3.1 of the MPA provides that Mr. Siters would receive an annual base salary of $50,000 payable in bi-weekly installments. Section 3.2 states that Mr. Siters would receive a $10,000 lump sum bonus on the first anniversary date and a $5,000 lump sum bonus on a second anniversary date. These bonuses were in lieu of any other bonus otherwise payable. Section 3.3 provides for the profit sharing amounts to be paid to Mr. Siters for his first, second, third, fourth and fifth "contract years."

Article IV of the MPA entitled "Term and Termination" provides in pertinent part:

> **4.1 Term**. The term of this Agreement shall begin as of the Effective Date and shall continue until the fifth anniversary of the Effective Date, unless extended in accordance with this Section 4.1 (as so determined, the "Term"). ...
>
> **4.2 Termination by Mutual Agreement or Due to Death**. Notwithstanding Section 4.1 hereof, this Agreement may be terminated at any time prior to the expiration of the Term by the mutual written agreement of the parties. In the event of the Manager Partner's death during the Term, this Agreement shall terminate immediately.

8

**4.3 Termination by Managing Partner.** Notwithstanding Section 4.1 hereof, this Agreement may be terminated for any reason by the Managing Partner upon ninety (90) days' prior written notice.

**4.4 Termination by Morrison.** Notwithstanding Section 4.1 hereof, this Agreement may be terminated by Morrison:

(a) at any time during a probationary period commencing on the Effective Date and ending on the first anniversary of the Effective Date;

(b) immediately for "cause", ....

. . . .

(c) immediately upon a determination by Morrison that the Managing Partner has become mentally or physically disabled in a manner that shall prevent performance of substantially all of the Managing Partner's duties for a period of not less than thirty (30) days, ...

(d) at any time upon thirty (30) days prior written notice other than for "cause," as defined in Section 4.4(b) above; or

(e) immediately following a decline in Restaurant sales for two consecutive Contract Years during the Term.

**4.5 Payments upon Termination.** ... In the event this Agreement is mutually terminated pursuant to Section 4.2 hereof or is terminated by Morrison pursuant to Section 4.4(a), (c) or (d) hereof, the Morrison shall pay in a lump sum to the Managing Partner a pro rata portion of any supplemental bonus and any profit-sharing amount earned pursuant to Sections 3.2 and 3.3 above, but unpaid, through the date of termination of this Agreement. ...

The contract provides for a compensation/bonus schedule for the five year period. The contract also clearly allows EITHER party to terminate the employment relationship. The provision of the contract that clearly allows either party to terminate the employment relationship within the 5 year contract period makes clear that Mr. Siters cannot establish a clear and unequivocal offer of lifetime employment or employment for a specific duration. The contract does not modify the "at-will" employment relationship.

Although the employment-at-will relationship was not modified, written notice of termination was required by the contract. Mr. Siters has submitted an affidavit stating that he did not receive written notice of termination. Ruby Tuesday has submitted no evidence in opposition to this affidavit. In *Curacare, Inc. v. Pollack*, 501 So.2d 470 (Ala.Civ.App. 1986), the Alabama Court of Civil Appeals held:

> The contract entered into by the parties states at paragraph 8 the following:
>
>> "*Termination*: Employment hereunder may be terminated by either party hereto with written notice to the other party two weeks prior to the effective date of termination.
>
> The foregoing clause makes termination of Pollack's employment dependent upon "written notice" being provided to the other party. It was undisputed at trial that Curacare terminated Pollack's employment by giving him oral notification on approximately September 13, 1983. It is Curacare's failure to provide written notice of termination that Pollack claims as a breach of the employment contract.
>
> A breach of contract has been stated as being a party's failure to do a particular thing which he had agreed to do by way of contract. *Seybold v. Magnolia Land Co.*, 376 So.2d 1083 (Ala. 1979).

10

> It is clear from the facts of this case that Curacare breached the terms of the contract between Pollack and Curacare. Termination of employment was expressly conditioned upon written notification. No other notice would suffice.

501 So.2d at 471-72.

*Curacare* requires the conclusion that defendant breached the contract with plaintiff in failing to provide written notice of termination as required by § 4.4(d). Plaintiff's damages are also controlled by *Curacare*:

> Finally, Curacare contends that the trial court erred in its award of damages. Curacare contends that, even if it were found to be in breach of the contract, it was error for the trial court to award any amount of damages exceeding two weeks of compensation. We agree.
>
> It is well established that in contract law the primary duty of the trial court is to put the injured party in the condition he would have occupied if the contract had not been violated, or had been fully performed. *Marshall Durbin Farms, Inc. v. Landers*, 470 So.2d 1098 (Ala. 1985); *Files v. Schaible*, 445 So.2d 257 (Ala. 1984); *Brendle Fire Equipment, Inc. v. Electronic Engineers, Inc.*, 454 So.2d 1032 (Ala. Civ. App. 1984). However, the injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance. 25 C.J.S. *Damages* § 74 (1955).
>
> In the case at bar, if Curacare had performed in accordance with the terms of the contract, it would have provided Pollack with written notice of termination, rather than oral notice. Written notice of termination would have provided Pollack two weeks' notification before his eventual termination. Written notice would have constituted perfect performance under the terms of the contract between the parties.

11

> Thus, any damage award to Pollack in excess of two weeks' compensation, $562.50, is excessive.

*Id.*

Pursuant to § 4.5 of the contract and in accordance with *Curacare*, Mr. Siters is entitled to damages which represents thirty (30) days payment of his base salary and a pro rata portion of any supplemental bonus or profit-sharing amount earned pursuant to § 3.2 and § 3.3 but unpaid thirty (30) days after Mr. Siters received oral notice of termination.

Based on the foregoing, Ruby Tuesday's motion to dismiss is due to be granted with respect to the claims of fraud and conversion. Ruby Tuesday's motion for summary judgment is due to be denied with respect to the breach of contract claim, and Mr. Siters's motion for summary judgment is due to be granted with respect to the breach of contract claim. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

DONE this the 20th day of November, 2002.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE